# JOHN B. GRANDSTAFF et al., Respondents, v. NEWTON S. BLAND, Appellant.

St. Louis Court of Appeals. Argued and Submitted May 6, 1912. Opinion Filed June 4, 1912.

1. INJUNCTIONS: Mandatory Injunctions: Character of Proof Required. In an action for a mandatory injunction, the court will not grant the relief unless the evidence clearly establishes the essential allegations of the petition; the burden of proof being on the plaintiff. [Per REYNOLDS, P. J.]

2. APPELLATE PRACTICE: Injunctions: Scope of Review. While, on an appeal from an order granting a temporary injunction, great deference is paid to the trial court's conclusion, yet, on a final decree, the appellate court, as in all cases in equity, must consider the entire case on its merits. [Per REYNOLDS, P. J.]

3. WATERS AND WATERCOURSES: Definition. The definition of a watercourse, as given in Benson v. Railroad, 78 Mo. 504, is adopted. [Per REYNOLDS, P. J.]

4. ————: Natural Watercourses: Sufficiency of Evidence to Establish. A creek in which there was a flow of water in wet weather only, although pools of water stood in its bed and there were a few springs along it from which water flowed in wet weather, and which was without defined banks in many places, is *held* by REYNOLDS, P. J., not to be a watercourse.
*Held*, by NORTONI, J., that the evidence tends to prove the creek is a natural watercourse.
CAULFIELD, J., expresses no opinion on this question.

5. ————: Surface Water. The common law rule as to surface waters prevails in this state—that is, owners of lands may improve them by obstructing or diverting such waters, provided it be not done in a reckless manner resulting in injury to some other person. [Per REYNOLDS, P. J.]

6. ————: Injunction: Enjoining Interference with Watercourse: Sufficiency of Evidence. In an action for a mandatory injunction by landowners to compel another landowner to remove a dam constructed by him across, and to fill up a ditch and remove a levee constructed by him along, an alleged natural watercourse, and to enjoin him from further damming up or diverting the flow of water in such watercourse through the lands of plaintiffs, *held* by REYNOLDS, P. J., that the evidence does not show that the levee, dam and ditch tended to throw

Grandstaff v. Bland.

any more water on the lands of plaintiffs than had spread over them during high water before the levee, dam and ditch were constructed.

7. ———: ———: ———: Statute Considered. In an action for a mandatory injunction by landowners to compel another landowner to remove a dam, constructed by him across, and to fill up a ditch and remove a levee constructed by him along, an alleged natural watercourse, and to enjoin him from further damming up or diverting the flow of water in such watercourse through the lands of plaintiffs, *held* by REYNOLDS, P. J., that, even though it were established that the creek, along or in connection with which the levee, dam and ditch were constructed, was a natural watercourse, nevertheless defendant's lands being "agricultural lands" and it appearing that the waters from surrounding lands overflowed the south portion of them, defendant was within his rights, under section 6962, Revised Statutes 1899, in constructing the levee, dam and ditch along his own land so as to create a channel for the water, "thus securing proper drainage to such land;" the right given the landowner by the statute being absolute and substantive.

8. **STATUTE OF FRAUDS: Parol License to use Real Property: Evidence.** Where a cut was made and a levee constructed across the corner of a tract of land owned by another, pursuant to permission given by him, the rights thereby created were not within the Statute of Frauds, and parol evidence was admissible to establish them.

9. **LICENSES: Parol License to Use Real Property: Irrevocable Interest.** One making a cut and constructing a levee across the corner of a tract of land owned by another, pursuant to permission given by him and with his assistance, became a purchaser for a valuable consideration, and the landowner could not thereafter revoke the license.

10. **APPELLATE PRACTICE: Disposition of Equity Case: Erroneous Exclusion of Evidence.** Where, upon the reversal of a suit for a mandatory injunction for the prejudicial exclusion of evidence offered by the defendant, it appears that, by reason of such exclusion, the plaintiffs had no opportunity to meet the excluded evidence, the case will be remanded for a new trial, although the excluded evidence is before the reviewing court.

Appeal from Clark Circuit Court.—*Hon. C. D. Stewart*, Judge.

Reversed and remanded.

*O. C. Clay, Whiteside & Rutherford* and *A. F. Haney* for appellant.

(1) Plaintiffs' cause of action is based upon the charge that defendant is obstructing the channel of a natural watercourse by building a dam across it and diverting the water therefrom onto plaintiffs' lands. To make out their cause of action plaintiff must prove that Doe branch is a natural watercourse. Benson v. Railroad, 78 Mo. 504; Jones v. Railroad, 18 Mo. App. 251; Webb v. Carter, 121 Mo. App. 147; Hoester v. Hemsath, 16 Mo. App. 485. (2) It being regarded as surface water, defendant's right to dig the ditch and to drain said water down into the natural depression leading from the southeast portion of his land is undisputed, as that natural depression leads to a natural watercourse. R. S. 1909, sec. 5662; R. S. 1899, sec. 6962; Gray v. Schriber, 58 Mo. App. 173. (3) If it be replied that the maintenance of this dam, levee and ditch, by reason of their diverting the water of the branch to a certain part of the land of plaintiff, is in the nature of a license revocable at the will of the plaintiff, the answer to that is that under the facts of this case the defendant's right to maintain these works is an easement and not a license, according to the controlling decisions of this state. Baker v. Railroad, 57 Mo. 265; School Dist. v. Lindsay, 47 Mo. App. 134; Sanford v. Kern, 223 Mo. 629. (4) The court erred in its rulings excluding the evidence offered by defendant, showing a contract or agreement entered into between defendant and plaintiff John B. Grandstaff for the purpose of disposing of the water. Power v. Dean, 112 Mo. 288; Sanford v. Kern, 223 Mo. 616.

*T. L. Montgomery* for respondents.

(1) Doe creek is a natural stream and watercourse and as such was made up, more or less, from

surface water as well as numerous springs along its course before it reached the dam in controversy, with well defined banks, but after this water enters its banks from whatever source and commences to flow within its banks it is no longer considered surface water, although it does not flow continuously during the year. Jones v. Hanover, 55 Mo. 462; Kenney v. Railroad, 74 Mo. App. 301; Munkres v. Railroad, 72 Mo. 514; Summons v. Winters, 28 Am. St. Rep. 727; Gibbs v. Williams, 37 Am. Rep. 245. (2) Water escaping from this stream or diverted by the dam in question upon the lands of respondents is surface water against which they have a right to protect themselves. Johnson v. Railroad, 111 Mo. App. 378; McCormick v. Railroad, 57 Mo. 438; Abbott v. Railroad, 83 Mo. 271. (3) Any obstruction of the flow of water in a natural watercourse resulting in injury to another person, furnishes such person a right of action however careful the obstruction may have been made. Edwards v. Railroad, 97 Mo. App. 103; Rychlicki v. St. Louis, 98 Mo. 500; Paddock v. Somes, 102 Mo. 237; Woods, Law of Nuisances (2 Ed.), 1015. (4) A right to flow water over another or to change the course of a natural watercourse can never be created by parol, and is within the Statute of Frauds, and did not and coud not ripen into an irrevocable license short of the statutory period of ten years. Dunham v. Joyce, 129 Mo. 5; Tanner v. Valentine, 75 Ill. 624; Lead Co. v. White, 106 Mo. App. 222; Pitzman v. Boyce, 111 Mo. 387; Williams v. Beatty, 139 Mo. App. 167; Washburn on Easements (3 Ed.), pp. 23, 24; Desloge v. Peace, 38 Mo. 588; Fuhr v. Dean, 26 Mo. 116; Hurt v. Adams, 86 Mo. App. 75; Nelson v. Nelson, 41 Mo. App. 130; 30 Am. and Eng. Ency. Law (2 Ed.), 344; Anthony v. Building Co., 188 Mo. 704; Wilmington W. P. Co. v. Evans, 46 N. E. 1084; Tiedeman on Real Property (1 Ed.), sec. 600; Wilson v. Railroad, 42 N. W. 600; Woodward v. Seely, 50 Am. Dec. (Ill.)

445; Stevens v. Stevens, 45 Am. Dec. (Mass.) 203; Seidensparger v. Spear, 35 Am. Dec. (17 Me. 123) 234; Smith v. Musgrove, 32 Mo. App. 241; Jones v. Stover, 6 L. R. A. (N. S.) 155; Pifer v. Brown, 49 L. R. A. 497.

REYNOLDS, P. J.—This is a suit by plaintiffs, respondents here, for a mandatory injunction—mandatory in that it asks that defendant, appellant here, be required to remove a dam and fill up a ditch and remove a levee alleged to have been constructed by him along what is called a natural watercourse running through the south of defendant's farm and in a northeasterly direction and after passing through plaintiffs' farms and through the southwest corner of an adjoining farm thence in a southeasterly course, as it is claimed—and injunctive, in asking that defendant be restrained from further damming up or diverting the flow of water through what is claimed to be its natural course through the lands of plaintiffs, it being claimed that the waters of this creek, following their natural course and flowing through the lands of plaintiffs, would ultimately pass through sloughs south of plaintiffs' lands and thence into the Mississippi river.

Plaintiffs' farms adjoin each other, that of John B. Grandstaff lying immediately south of the farm of defendant and that of Taylor Grandstaff lying directly south and to the west of the farm of John B. Grandstaff. At the close of the evidence in the case the learned trial judge, under request for a finding of fact, found that what is called Doe Run branch, that being the name given to this stream, "is a natural watercourse and runs through the farm of defendant with well defined banks and bed and that the dam across Doe Run branch, and ditch running south therefrom, built by defendant, diverts the water from its regular channel and causes more water to run on

plaintiff's (sic) lands, from said Doe Run branch than when in its original channel." The court by its judgment directed defendant to remove the dam and the levee along the ditch, which he had dug and constructed on his own land but south of this branch, and to fill up the channel or ditch which he had also dug on his own land. From this decree defendant duly perfected appeal to this court.

We have read all the testimony in the case as presented by the abstracts both of appellant and respondents and are not prepared to agree with the conclusion arrived at by the learned trial judge. In the first place, giving the respondents the benefit of the most favorable construction that could be placed upon their testimony, as we would do if this was an action at law instead of a proceeding in equity, we cannot agree that this Doe Run creek or branch is a natural watercourse. This is an action in equity for a mandatory injunction and it is a safe rule of decision to hold that an injunction will not be made perpetual on doubtful evidence. This rule is particularly applicable and of great force when in addition to an injunction to restrain from doing an act it is to be followed by a mandatory order directing the undoing of what has been done. The evidence upon which a court of equity will grant an injunction in cases of this character "must clearly establish the essential allegations of the bill, the burden of proof being on the complainant." [1 High on Injunctions (4 Ed.), sec. 870.] While in an appeal from an order granting a temporary injunction great deference is paid to the conclusion arived at by the trial court, on a final decree the appellate court, as in all cases in equity, must consider the entire case upon the merits. [2 High on Injunctions (4 Ed.), secs. 1696, 1720.]

Our Supreme Court in Benson v. Chicago & Alton R. Co., 78 Mo. 504, l. c. 514, adopts the definition of a watercourse as given by the Supreme Court of

Wisconsin in Hoyt v. City of Hudson, 27 Wis. 656, l. c. 661, as follows: ''There must be a stream usually flowing in a particular direction, though it need not flow continually. It may sometimes be dry. It must flow in a definite channel, having a bed, sides or banks, and usually discharge itself into some other stream or body of water. It must be something more than a mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes. It does not include the water flowing in the hollows or ravines in land, which is the mere surface water from rain or melting snow, and is discharged through them from a higher to a lower level, but which at other times are destitute of water. Such hollows or ravines are not in legal contemplation watercourses.'' That has been the accepted definition in this state from that time on. Our court in Webb v. Carter, 121 Mo. App. 147, l. c. 153, 98 S. W. 776, quotes the above approvingly, and Judge Goode, who delivered the opinion in that case, cited many other cases in illustration of the rule.

It appears from the evidence in this case that there was only a flow of water in this watercourse in wet weather. It is true that it appears that there were bodies of water in hollows along this branch and a few springs that in wet weather also furnished water but with one exception most of them appear to have flowed only in wet weather. It is held by this court in Hoester v. Hemsath, 16 Mo. App. 485, that the fact ''wet weather'' springs may furnish water, does not constitute the body through which they drain a watercourse.

Apart from the water so occasionally furnished, this branch was, throughout its principal course, through the lands of plaintiffs and defendant, dry— at many places without defined banks—in a part of it, the bed above the dam. We are not prepared to say that it meets the accepted definition of a watercourse.

In Cox v. Hannibal & St. J. R. Co., 174 Mo. 588, 1. c. 606, 74 S. W. 854, it is said: "The common law rule as to surface water prevails in this state; that is, owners of lands may improve them by obstructing or diverting it, provided it be not done in a reckless manner resulting in injury to some other person." [See, also, Abbott v. Kansas City, St. J. & C. B. Ry. Co., 83 Mo. 271, and cases there cited.]

We are accordingly remanding the case that the trial court may apply this rule to the facts. Moreover, we have very grave doubt whether the facts in evidence show that the erecting of the dam and levee and making the cut resulted in injury to these plaintiffs. Where this branch enters the farm of the defendant, running northeasterly from and through the northwest corner of John B. Grandstaff's farm, what is called the "old channel" runs in a northerly and easterly course, describing an arc of a circle extending up into the farm of defendant, then as it curves downward and in a southeasterly direction, it passes out of the farm of defendant and cuts into that of an adjoining proprietor to the east of defendant, then south into and through the farms of plaintiffs, apparently in no well-defined course but southerly into a lake and thence through sloughs to the Mississippi river. The dam which defendant constructed is on his own land, directly north of the land of John B. Grandstaff, and defendant cut the ditch from this dam easterly through his land and to a point in the old channel a little south of where that enters the farm of Grandstaff. So that practically all that the dam and ditch do is to straighten the course through the lands of defendant. The levee is south of this cut, between it and the lands of John B. Grandstaff, and it and the new channel cut across a corner of John B. Grandstaff's farm. The evidence in the case does not satisfy us that the construction of the levee, dam and ditch tend to throw any more water on the lands of

plaintiffs than before that had spread over them in times of high water. In point of fact, as it seems clear to us, this work kept the water in bounds; not a particle more went through this new channel than before. Its effect was to save a considerable acreage of defendant from overflowing and this without throwing any larger volume of water on the lands of plaintiffs, or at any other place on those lands than before the construction of these improvements.

But passing that, there is another phase of the case to be considered. Section 6962, Revised Statutes 1899, provided that the owner of land "shall be permitted to construct drains, for agricultural purposes whereby the water will be carried into any natural watercourse, for the purpose of securing proper drainage to such land, without being liable in damages therefor to any other person or persons or corporation." This section was amended in 1909 and now appears in our revision of 1909 as section 5662. As this action was commenced in 1908 and the acts complained of were committed in that year, this section 6962 of the revision of 1899 is controlling. That these lands are agricultural lands is not controverted. As is said by our court in Gray v. Schriber, 58 Mo. App. 173, the right given the land owner by this section of the statute is absolute and substantive. Even if it be conceded, therefore, that this branch is a natural watercourse, as it appears that the waters from the surrounding lands overflowed the south portion of the agricultural land of defendant, he was within his right when he constructed the dam, the levee and the ditch, constructing them along his own land and so constructing a channel for the water and thus "securing proper drainage to such land."

It is true that the levee and ditch cut across a corner of the lands of John B. Grandstaff. The defendant offered evidence to the effect that this cut and

levee through the corner of Grandstaff's land were made with his permission, in fact that he had assisted in the work. This was excluded on the ground that it created an interest in the land by parol, it also being in evidence that Grandstaff, after the work was done and before this suit was commenced, had revoked the license. The exclusion of this evidence was error. If on the faith of the license defendant had expended labor. and money in the construction of the ditch and levee, and had made the improvement on the faith of the license, "he has become a purchaser for valuable consideration." [Cape Girardeau & T. B. T. R. Co. v. St. Louis & G. R. Co., 222 Mo. 461, l. c. 484, 121 S. W. 300.]

While ordinarily in suits in equity causes are not reversed and remanded for a new trial, we are compelled to do so here for the reason that while the excluded evidence is before us, plaintiffs, by that evidence being excluded, had no opportunity to meet it by any evidence they may have.

The judgment of the circuit court is reversed and the cause remanded. *Nortoni* and *Caulfield, JJ.,* concur in reversing and remanding, both solely on the ground that the trial court erred in the exclusion of evidence; Judge *Nortoni* being further of the opinion that the evidence tends to prove a natural watercourse.